IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELODY L. BROOKS
PO Box 334
Jessup, Maryland 20794

Plaintiff

v.

MARYLAND STATE POLICE
1201 Reisterstown Road
Pikesville, Maryland 21208

Serve on: Col. Thomas E. Hutchins, Superintendent

Defendant

Civil Action No.: CCB-01-4003

* * * * * * * * * * * * *

AMENDED COMPLAINT

Melody L. Brooks, by her attorneys Michael Marshall and Schlachman, Belsky & Weiner, P.A., files this Complaint of employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1343(4), 28 U.S.C. § 1331. Venue of this Court is invoked pursuant to 28 U.S.C. § 1391(b), this being an action not founded on diversity of citizenship, and the District of Maryland being the judicial district in which all parties reside.

PARTIES

2. The Plaintiff Melody L. Brooks, is a 46 year old, Caucasian, female citizen of the United States residing in Jessup,Maryland. Melody L. Brooks has been employed by the Maryland State Police as a Police Communications Officer ("PCO") since August 10, 1977. At the time of the incident in question, Ms. Brooks was assigned to the Waterloo Barrack of the Maryland State Police, in Jessup, Maryland.

3. The Defendant Maryland State Police ("MSP"), is an agency of the State of Maryland and regularly employs more than fifteen persons.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. PCO Brooks filed a timely charge of discrimination with the Baltimore District Office of the United States Equal Employment Opportunity Commission ("EEOC") on July 25, 2001. A copy of that complaint is attached hereto as Exhibit A.

5. On September 25, 2001, the District Director for the EEOC forwarded a letter to PCO Brooks indicating the EEOC was unable to conclude the information established a violation. As such, the EEOC elected not to pursue any further investigation. See Exhibit B and attached Right to Sue Letter.

6. On July 1, 2004, PCO Brooks filed an additional, and timely, Charge of Discrimination with the Baltimore District Office of the United States Equal Employment Opportunity Commission. See Exhibit C.

7. On August 2, 2004, PCO Brooks received a Dismissal and Notice of Rights

from the EEOC. The EEOC stated that it was closing its file on the charge for the following reason:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

See Exhibit D.

ALLEGATIONS COMMON TO ALL COUNTS

8. PCO Brooks has been employed by the Maryland State Police as a Police Communications Officer ("PCO") since August 10, 1977. At the time of the incident in question, PCO Brooks was assigned to the Waterloo Barrack of the Maryland State Police, in Jessup, Maryland.

9. PCO Brooks suffers from a medical condition called endometriosis which causes her to suffer severe cramping, painful menstruation, and severe abdominal or low back pain and this medical condition substantially limits her major life activities. In the alternative, the MSP perceives her condition as a disability.

10. On June 7, 2000, PCO Brooks was ordered by her supervisor to attend a meeting at the Maryland State Police Headquarters Building to discuss various options available to her as they related to her current and future work status.

11. At that meeting, PCO Brooks was advised that the Maryland State Police Medical Director had determined that PCO Brooks was unable to perform the essential job function of her position, with or without accommodations. PCO Brooks was offered three

options: (1) Submit an application for disability retirement benefits and remain on "light duty" until the MSRA renders a decision; (2) complete an Application for Employment (MS-100) for alternative placement with other State agencies; or (3) tender her resignation no later than July 1, 2000.

12. PCO Brooks was advised that failure to select one of the options in paragraph 9 above, by June 21, 2000, may result in termination of her employment. See June 7, 2000 Meeting Notes attached hereto as Exhibit E.

13. The Department was advised at that time that PCO Brooks was not currently on "light duty" and had not been on "light duty" since May 2000.

14. In July 2000, PCO Brooks' attorney met with Major Herron of the Maryland State Police regarding PCO Brooks' employment status. The options made available to PCO Brooks were discussed along with several alternative options. These alternative options included a permanent shift assignment or a transfer to another position that does not require rotating shifts, including a transfer to the Maryland State Police, Licensing Division, for which PCO Brooks would be highly qualified. PCO Brooks was willing to take a reduction in salary if required.

15. These alternative options were requested after PCO Brooks' physician advised that a more stable work schedule could improve her use of earned sick leave. At the conclusion of the June 7, 2000, meeting, PCO Brooks' attorney wrote a letter to Major Herron requesting that the Department reconsider its position. The July 14, 2000, letter is attached hereto as Exhibit F.

16.     On August 3, 2000,  H. Frank Rayne, Director of Personnel Services for the Maryland State Police wrote a letter to PCO Brooks' attorney advising that the Department believed that PCO Brooks was incapable of performing the essential job functions of her position, and would never be able to do so; PCO Brooks' use of sick leave severely affected Barrack operations and the morale of other PCO employees who were adversely affected by her unsatisfactory attendance and chronic medical condition; and that there were no data entry clerical positions in the Department or State at level 11. Mr. Rayne further stated that a final determination had not been made in PCO Brooks' employment status. The August 3, 2000, letter is attached hereto as Exhibit G.

17.     In a later follow-up telephone call to PCO Brooks' attorney, Mr. Rayne advised that PCO's are required to work rotating shifts and that accommodations would not be made. Mr. Rayne also advised that there were no vacant positions available for PCO Brooks in the Licensing Division.

18.     In August 2000, PCO Brooks' supervisor, Dan Hicks, prepared her mid-cycle Performance Planning and Evaluation Program ("PPEP"). The evaluation was not given to PCO Brooks until September 2000. PCO Brooks was advised by Dan Hicks and Sergeant William Hayes that the delay occurred because Colonel Arrington, Lieutenant Gardner and Mr. Rayne ordered Mr. Hicks to lower PCO Brooks' evaluation rating to unsatisfactory, but Mr. Hicks refused to change the rating.

19.     In September 2000, Mr. Hicks revised the schedule for the PCOs assigned to

the Waterloo Barrack. The schedule was revised because the Barrack was making medical accommodations for PCO Phil Fister, a white male. PCO Fister was assigned a permanent shift as a result of a medical condition. This is the same accommodation that was denied to PCO Brooks just one month prior. See Exhibit H.

20. In November 2000, Mr. Hicks revised the schedule again. The revised schedule had PCO Fister continuing on a permanent shift, and Mr. Hicks, also a white male, being scheduled for a permanent shift. Mr. Hicks was given a permanent schedule due to his responsibilities; however, Mr. Hicks told several employees that it was due to a medical condition relating to chest pains. See Exhibit I.

21. In April 2001, PCO Elaine Brown, an African American female assigned to the Waterloo Barrack, requested and received a transfer to the Maryland State Police, Licensing Division. This position provides a Monday through Friday, non-rotating shift position.

22. PCO Brooks requested a transfer to this Division in July 2000, but was advised that there were no positions available.

23. During the entire time she has been employed by the MSP, PCO Brooks has received overall PPEP ratings that have either met or exceeded the MSP standards.

24. On July 25, 2001, PCO Brooks filed a complaint with the EEOC against the Maryland State Police alleging that the facts presented above resulted in a denial of accommodation to work a non-rotational shift. See Exhibit J.

25.     On September 25, 2001, the EEOC sent PCO Brooks a letter informing her of her right to sue. See Exhibits K and L.

26.     On January 21, 2001, PCO Brooks filed a timely complaint in the District Court of Maryland, for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000(e)., et. seq., and the Americans With Disabilities Act (ADA), 42 U.S.C. Sec. 12101, et. seq.

27.     In October 2002, the parties filed a motion to stay proceedings pending an internal investigation of these charges by the Maryland State Police.

28.     After her EEOC filing, PCO Brooks experienced further discrimination. Sgt. Steve Hamm filled out a Job Observation Report (Form 164A) indicating poor job performance by PCO Brooks for failing to correctly fill in time on an Employee Work and Leave Report (Form 31) for August 7, 2002. PCO Brooks corrected her error on the Form 31, by making comments withing the Form 164's "Employee's Comments." See Exhibit M.

29.     For her comments on the Form 164A, amending her error on the Form 31, Sgt. Hamm gave PCO Brooks another unfavorable review, through a Form 164A, citing insubordination. In his Form 164A to PCO Brooks, Sgt. Hamm stated:

> Be thankful of your government job, Ms. Brooks. As the beneficiary of a broken system, the state police accommodates you without precedent, allowing you to expend leave at disturbing rates and in suspect combinations.

See Exhibit N.

30.     On August 15, 2002, at the request of PCO Brooks, the Fair Practices Unit of

the Maryland State Police, initiated a formal inquiry into PCO Brooks' alleged hostile work environment. See Exhibit O.

31. On July 23, 2003, the Fair Practices Unit issued a disposition report with respect to Lt. Tom Gardner and Sgt. Steve Hamm, stating "direct and circumstantial evidence indicates a pattern of conduct one can deduct as harassment." The report also recommended the separation of all three individuals. See Exhibit P.

32. In March 2003, PCO Brooks received an unsatisfactory evaluation from Police Communications Superviso (PCS) Joseph Miller. However, PCO Brooks had not worked with PCS Miller since September 2002.

33. On August 6, 2003, the Fair Practices Unit issued a report with respect to Lt. Gardner and PCS Miller. The Fair Practices Unit found:

> PCS Miller stated he doesn't observe the Complainant's work because he doesn't work with the Complainant. However, when asked how he can fairly rate the PCO's when he doesn't work with them, he stated that he can tell which ones are doing their work, commenting that he makes mental notes of things, but doesn't document them. This method is unacceptable in determining evaluation ratings and justification for these ratings.

The Fair Practice Unit's report, in regards to Lt. Gardner and PCS Miller, concluded that "Both of the accused's behavior is disturbing, and if allowed to go unchecked, their behavior could place this department in a position that is indefensible." It further found that there are other employees at the Waterloo Barracks who had used "as much leave as the Complainant, if not more, but have not been adversely affected by lowered PEP evaluation." See Exhibit Q.

34. On December 17, 2002, PCO Brooks began working for the Maryland State Police Department of Motor Vehicle Administration. She worked a steady 7:00AM – 3:00PM shift, while receiving the same wage she earned as a PCO at the Waterloo Barracks.

35. On September 30, 2003, PCO Brooks was ordered to return to work at the Waterloo Barracks, to work under PCS Miller.

36. Upon return, PCO Brooks continued to experience harassment from her peers at Waterloo. She was constantly referred to, by other officers, as "AWOL." See Exhibit N.

37. On December 15, 2003, PCO Brooks was ordered by the Maryland State Police to undergo a medical evaluation. She was not given any reason for the order other than that someone from the Waterloo Barracks had filed a hygiene complaint against her, alleging that "she smelled like an animal."

38. The medical examination failed to substantiate the hygienic complaint.

39. From December 17, 2003 through January 22, 2004, PCO Brooks was on leave pursuant to the Family and Medical Leave Act (FMLA).

40. On January 21, 2004, PCO Brooks was ordered to return to full duty, rotating shift-status at the Waterloo Barracks. See Exhibit R.

41. On January 23, 2004, PCO Brooks requested additional leave under the FMLA. PCO Brooks' accompanying Health Care Certification form indicated that PCO Brooks was unable to work in any capacity, including administrative desk duties. See Exhibit S.

42. On February 3, 2004, the FMLA leave was approved.

43. On February 6, 2004, PCO Brooks was ordered back to work. Currently, she works a rotating shift at the Waterloo Barracks. See Exhibit T.

COUNT I

Melody L. Brooks sues the Maryland State Police for violation of 42 U.S.C. § 2000e, incorporating the allegations in paragraphs 1-43.

44. PCO Brooks' request to transfer to the Maryland State Police, Licensing Division, was denied, while an African American female, in a similar position, was not threatened with termination, but was given the transfer. The basis for PCO Brooks denial of transfer was that she is Caucasian.

45. By denying PCO Brooks accommodations because of her race, the employer violated PCO Brooks' rights protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

COUNT II

Melody L. Brooks sues the Maryland State Police for violation of 42 U.S.C. § 2000e, incorporating the allegations in paragraphs 1-45.

46. PCO Brooks' request for a permanent schedule due to her medical condition was denied, while two white males were given permanent schedules due to their medical conditions.

47. By denying PCO Brooks accommodations because of her gender, the employer violated PCO Brooks' rights protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

COUNT III

Melody L. Brooks sues the Maryland State Police for violation of 42 U.S.C. § 12001, incorporating the allegations in paragraphs 1-47.

48. The Maryland State Police threatened PCO Brooks with termination because of her disability, which was occasioned by her endometriosis. The Maryland State Police denied PCO Brooks a permanent schedule stating that it was an essential job function to be able to work rotating shifts. The Maryland State Police then provided permanent shifts to two white males and a black female because of medical conditions, while still denying the same accommodation to PCO Brooks.

49. The Maryland State Police, in its Fair Practice Unit's investigation, found that PCO Brooks had been treated in an unjustified and unacceptable manner by her supervising officers and in retaliation for her prior complaints.

50. Because PCO Brooks was threatened with termination because of a disability and/or perceived disability, and because the employer did not attempt to reasonably accommodate PCO Brooks' disability, while accommodating other similarly situated employees, the employer violated PCO Brooks' rights protected by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101.

WHEREFORE, Melody L. Brooks requests the following relief:

A. That this Court issue a judgment declaring the actions against her to be in violation of her federally-protected rights under 42 U.S.C. § 2000e et seq.;

B.      That this Court issue a judgment declaring the actions against her to be in violation of her federally-protected rights under 42 U.S.C. § 12101 et seq.;

C.      That this Court award compensatory damages in the amount of a $300,000.00 and punitive damages in the amount of $1,000,000.00;

D.      That this Court order the transfer or assignment of a permanent schedule to Melody L. Brooks as a PCO with the Maryland State Police.

E.      That this Court award reasonable costs in attorneys' fees; and

F.      That this Court award such other and further relief as the Court deems appropriate.

Michael Marshall
Schlachman, Belsky & Weiner, P.A.
20 South Charles Street, 10th Floor
Baltimore, Maryland 21201
(410) 685-2022
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELODY L. BROOKS *
PO Box 334
Jessup, Maryland 20794 *

Plaintiff *

v. *

MARYLAND STATE POLICE * Civil Action No.: CCB-01-4003
1201 Reistersown Road
Pikesville, Maryland 21208 *

*

Defendant *

* * * * * * * * * * * * *

PRAYER FOR JURY TRIAL

Now comes the Plaintiff, Melody L. Brooks, by and through her attorneys, Michael Marshall and Schlachman, Belsky & Weiner, P.A., and hereby prays a jury trial in the above-captioned matter.

Michael Marshall
Schlachman, Belsky & Weiner, P.A.
20 South Charles Street, 10th Floor
Baltimore, Maryland 21201
(410) 685-2022

Attorneys for Plaintiff

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY: [ ] FEPA [X] EEOC

CHARGE NUMBER: 120A10922

MD. Commission on Human Relations and EEOC
State or local Agency, if any

NAME (Indicate Mr., Ms., Mrs.): Ms. Melody L. Brooks

HOME TELEPHONE (Include Area Code): (410) 799-3556

STREET ADDRESS / CITY, STATE AND ZIP CODE: P.O. Box 334, Jessup, MD 20794

DATE OF BIRTH: 07/25/1957

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME: Maryland State Police

NUMBER OF EMPLOYEES, MEMBERS: Cat D (501 +)

TELEPHONE (Include Area Code): (410) 486-3101

STREET ADDRESS / CITY, STATE AND ZIP CODE: 1201 Reisterstown Road, Pikesville, MD 21208

COUNTY: 005

NAME:

TELEPHONE NUMBER (Include Area Code):

STREET ADDRESS / CITY, STATE AND ZIP CODE:

COUNTY:

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)):
[X] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[ ] RETALIATION [X] AGE [ ] DISABILITY [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST: 09/25/2000 LATEST: 04/01/2001
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I. I began my employment with the above named employer on August 10, 1977. My position is Police Communications Operator. On August 3, 2000, I was denied (via letter) a reasonable accommodation to work a non-rotational shift. On September 25, 2000, November 25, 2000, and April 4, 2001, I became aware that three co-workers were afforded the same type accommodation that was denied me.

II. The reason given to me for the above action is that the position in question is "a fully funded position which requires shift work and regular attendance."

III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended, with respect to reasonable accommodation.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

7/25/01 Melody L. Brooks
Date Charging Party (Signature)

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE (Month, day and year)

EEOC FORM 5 (Rev. 07/99)

FILE CO

PLAINTIFF'S EXHIBIT A


Baltimore District Office
10 S. Howard Street, 3rd Floor
Baltimore, MD 21201
PH: (410) 962-3932
TDD: (410) 962-6065
FAX: (410) 962-4270
EEOC Web Site: www.eeoc.gov

SEP 2 5 2001

Ms. Melody L. Brooks
P.O. Box 334
Jessup, Maryland 20794

Re: Charge No.: 120-A1-0972
Brooks v. Maryland State Police

Dear Ms. Brooks:

You filed a charge alleging discrimination prohibited by one of the following laws enforced by the Equal Employment Opportunity Commission (EEOC): Title VII of the Civil Rights Act of 1964, as amended; Age Discrimination in Employment Act of 1967, as amended (ADEA); Americans with Disabilities Act of 1990 (ADA); and/or the Equal Pay Act of 1963, as amended (EPA).

All charges filed are assessed upon receipt into the office and at various points thereafter as to whether there is evidence supporting the finding of a violation. The information obtained by the EEOC does not establish that your employer's actions violated the employment discrimination laws. The EEOC reviewed the evidence, including that which you provided and/or the evidence provided by your employer. The evidence is insufficient to establish a violation and there is little prospect that further investigation of your allegations would result in a finding of a violation.

You now have the right to file a lawsuit against the named respondent within 90 days from the date you received the enclosed Dismissal and Notice of Rights. If you filed a charge under the Equal Pay Act, the time limit for filing is, in most cases, two years from the date of the earliest violation. If you fail to file within the appropriate time, regardless of the law under which you filed your charge, you will lose your right to pursue this matter in court.

Sincerely,

James L. Lee
District Director

Enclosure:
Dismissal and Notice of Rights

PLAINTIFF'S EXHIBIT
B

To: Melody L. Brooks
P.O. Box 34
Jessup, Maryland 20794

From: U.S. Equal Employment Opportunity Commission
Baltimore District Office
10 S. Howard Street, 3rd Floor
Baltimore, Maryland 21201

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 120-A1-0972 | Wilma J. Scott, Supervisory Investigator | (410) 962-0887 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that afforded full relief for the harm you alleged.

[ X ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)* __________

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

James L. Lee, District Director

SEP 2 5 2001
*(Date Mailed)*

Enclosure(s)

cc: Lt. Susanne Mazan
EEO Officer, Office of Fair Practices
Maryland State Police
1201 Reisterstown Road
Pikesville, Maryland 21208

PLAINTIFF'S
EXHIBIT

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: [ ] FEPA [X] EEOC

Agency(ies) Charge No(s): 120-2004-02895

Maryland Commission On Human Relations and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Ms. Melody L. Brooks | (410) 799-3556 | 07-25-1957 |

Street Address / City, State and ZIP Code: P.O. Box 334, Jessup, MD 20794

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| MARYLAND STATE POLICE | 500 or More | (410) 486-3101 |

Street Address / City, State and ZIP Code: 1201 Reisterstown Road, Baltimore, MD 21208

| Name | No. Employees, Members | Phone No *(Include Area Code)* |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code:

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE [ ] COLOR [X] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[X] RETALIATION [X] AGE [X] DISABILITY [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE — Earliest: 09-30-2003 Latest: 02-06-2004

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I began my employment with the above named Respondent in 1977 as a Police Communications Officer. In July 2001, I filed a complaint with the EEOC (120-2001-00972C), alleging, among other things, a denial of an accommodation based on a disability. Following that complaint, I have been subjected to continuing disparate treatment. My requests for accommodations for my disability and transfers based on harassment from management were ignored. In addition, I was ordered back to work in February 2004, despite being on approved medical leave.

II. Respondent gave no explanation for the actions taken against me.

III. I believe I have been discriminated against because of my disability, in violation of the Americans with Disability Act (ADA), as to reasonable accommodation, my age, in violation of the Age Discrimination in Employment Act (ADEA) as to terms and conditions of employment and my sex, female, race, White, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, as to terms and conditions of employment.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

7/1/04 — *Date*

Melody L. Brooks — *Charging Party Signature*

SUBSCRIBED AND SWORN TO B[EFORE ME THIS DATE] *(month, day, year)*

PLAINTIFF'S EXHIBIT C

EEOC Form 161 (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Melody L. Brooks**
**P.O. Box 334**
**Jessup, MD 20794**

From: **Baltimore District Office**
**10 South Howard Street**
**3rd Floor**
**Baltimore, MD 21201**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **120-2004-02895** | **M. Patricia Tanner, Enforcement Supervisor** | **(410) 962-3707** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Judy W. Cassell for

**Marie M. Tomasso**
**Acting Director**

JUL 29 2004
*(Date Mailed)*

Enclosure(s)

cc: **Frank Rayne**
**Director of Personnel Services**
**MD STATE POLICE**
**1201 Reisterstown Road**
**Baltimore, MD 21208**

PLAINTIFF'S
EXHIBIT
D



Meeting - June 7, 2000
PCO II Melody L. Brooks - Waterloo Barrack
Topics to be Discussed

As a result of the comprehensive review of medical files and records of PCO Brooks, by the Maryland State Police Medical Director, it has been determined that PCO Brooks is unable to perform the essential functions of her position, with or without reasonable accommodation.

In light of this determination, the Maryland State Police is offering her the following options:

- Submit to Ms. Michelle Miller, Disability Retirement Coordinator, the necessary paperwork to apply for disability retirement. Remain on light duty until the MSRA renders a decision and/or

- Complete an Application for Employment (MS-100) and submit to Ms. Stephanie Noyes for forwarding to the Office of Human Resources Career Investment Program to consider alternative placement in other State agencies and/or

- Tender her written resignation with an effective date no later than July 1, 2000.

Failure by PCO Brooks to submit the necessary paperwork to select one or more of the above options by June 21, 2000, may result in the termination of her employment. The offering of these options to PCO Brooks is not intended to indicate insensitivity to her disability, but rather, is intended to assist PCO Brooks in making the necessary transition to vacate her current position, while also ensuring the continued efficient operation of the Waterloo Barrack.

To further assist PCO Brooks in making the transition from employment with the Maryland State Police to pursuing other employment options within and outside of Maryland State Government, she is also being given information regarding the Career Assessment and Development Unit of the Division of Rehabilitation Services (DORS).

Should PCO Brooks have questions or need additional information regarding the options and resources described herein, she is encouraged to contact TFC Jeffrey Alexander on (410)653-8246.

Melody L. Brooks — 6/7/2000
PCO II Melody L. Brooks, Waterloo Barrack — Date

H. Frank Rayne — 6/7/00
Mr. H. Frank Rayne, Director, Human Resources Division — Date

Attachments:
1. Authorization for Release of Information
2. Disability Retirement Application Packet
3. MS-100 Application for Employment
4. Maryland Rehabilitation Center Information Packet

PLAINTIFF'S
EXHIBIT
E

SCHLACHMAN, BELSKY & WEINER, P.A.

ATTORNEYS AT LAW

SIDNEY SCHLACHMAN
COUNSEL

HENRY L. BELSKY
HERBERT R. WEINER
MICHAEL MARSHALL*
JEFF HOROWITZ†*

LINDA D. MOELLER
STEVEN E. SUNDAY
ROANNE HANDLER
KIMBERLY A. ALLEY
MICHAEL J. BELSKY
CHRISTOPHER M. MILLER
MICHAEL E. DAVEY
LARRY J. FELDMAN*
J. ERIC GIBSON
DEBORAH J. SUESS

* ALSO MEMBER OF D.C. BAR
† ALSO MEMBER OF FLORIDA BAR

SUN LIFE BUILDING - TENTH FLOOR
20 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201
TELEPHONE: (410) 685-2022
TELEFAX: (410) 783-4771

TOWSON OFFICE
SUITE 101
405 E. JOPPA ROAD
TOWSON, MD 21286-5487
TELEPHONE: (410) 685-2022
TELEFAX: (410) 783-4771

UPPER MARLBORO OFFICE
2905-A OLD LARGO ROAD
P.O. BOX 1658
UPPER MARLBORO, MD 20773-1658
TELEPHONE: (301) 627-6360
TELEFAX: (301) 627-5911

EASTON OFFICE:
300 TALBOT STREET
SUITE 202
EASTON, MD 21601-3525
TELEPHONE: (410) 819-3715
TELEFAX: (410) 820-4980

REPLY TO

July 14, 2000

Major Vernon Herron
Maryland State Police
1201 Reisterstown Road
Pikesville, Maryland 21208

Dear Major Herron:

Thank you for the opportunity to meet with you and members of your staff regarding the employment issues involving PCO II Melody L. Brooks. As requested, the following is an overview of the concerns I have regarding the pending action against PCO Brooks.

PCO Brooks has been an employee of the Maryland State Police since 1978. She has spent her entire twenty-two (22) year career as a PCO assigned to the Waterloo Barrack. As you well know, the position of PCO is a very stressful position. Over these 22 years, PCO Brooks has suffered from several medical conditions which have caused her to use a great deal of sick leave. As a result, PCO Brooks has used advanced sick leave and has sick leave donated to her by another employee. PCO Brooks has also been forced to use LAW on certain occasions.

Notwithstanding these medical conditions, PCO Brooks has been a good PCO. Her performance evaluations from 1978 to 1996, were superior to satisfactory as rated by her supervisors.

In 1996, PCO Brooks' medical conditions seemed to get worse. The command staff at the Waterloo Barrack began to counsel her on her use of sick leave. It should be noted that her counseling was for the excessive use and timeless of notification of sick leave and not for sick leave abuse. PCO Brooks was placed on Special Medical Leave Reporting Status in 1997 and 1999 and fulfilled all the requirements of that status.

PLAINTIFF'S
EXHIBIT
F

In 1997, the State of Maryland changed its employee evaluation process to the Performance Planning and Evaluation Program (PPEP). As you know, civilian employees are evaluated at a mid-cycle and end of cycle periods. PCO Brooks has six (6) performance standards and eight (8) behavioral standards. PCO Brooks has the following ratings over the last three (3) years:

08/10/97 to 08/10/98

| | |
|---|---|
| MID-CYCLE: | 2.00 meets standards |
| END OF CYCLE: | 2.16 meets standards |
| AVERAGED OVERALL: | 2.08 meets standards |

08/10/98 to 08/10/99

| | |
|---|---|
| MID-CYCLE: | 2.16 meets standards |
| END OF CYCLE: | 2.11 meets standards |
| AVERAGED OVERALL: | 2.14 meets standards |

08/10/99 to 08/10/00

| | |
|---|---|
| MID-CYCLE: | 2.32 meets standards |
| END OF CYCLE: | n/a |
| AVERAGED OVERALL: | n/a |

As you can see, PCO Brooks' supervisors have rated her as an employee who "meets standards" of her position.

On June 7, 2000, an options meeting was held by the Human Resources Division with PCO Brooks in which I was also present. Mr. Rayne stated that it was the opinion of the Medical Director that PCO Brooks is unable to perform the essential functions of her position with or without reasonable accommodation. PCO Brooks was offered the options:

* Submit paperwork to apply for disability retirement and remain on light duty until the MSRA renders a decision;

PCO Brooks has a medical condition named endometriosis. According to her doctor, this condition is not a permanent disability, however, it can be very painful during her menstrual cycle. PCO Brooks does take medication to elevate the pain.

Additionally, PCO Brooks is not on light duty. PCO Brooks is in full duty status and has been since May 23, 2000, before the options meeting was held. No one from HRD knew, prior to the June 7, 2000 meeting, that PCO Brooks had been working full duty.

* Submit application to consider alternative placement in other State agencies;

This is not an option for PCO Brooks. It is overwhelming clear that when PCO Brooks comes to work, she is an excellent employee. She is very knowledgeable of her position is a very good PCO. The only essential job function that PCO Brooks has had trouble performing is coming to work regularly, as a result of her medical condition. It is not reasonable to believe that PCO Brooks would be hired by another State agency with this medical condition. This is really not an option.

* Tender her resignation.

PCO Brooks is single and self dependent. She lives alone without the ability of financial assistance from any other source. PCO Brooks has been a dedicated PCO for 22 years, she does not have the skills to simply resign and find other employment.

The options submitted by HRD are not viable options for PCO Brooks. However, she is willing to consider other options within the Maryland State Police. I met with Mr. Rayne regarding the Work Force Plan that was created to fill civilian vacancies within the Department. PCO Brooks and I believe that another position within the Department that does not require rotating shifts my be beneficial to PCO Brooks' medical condition and the Department.

I asked that Mr. Rayne consider a position in the Licensing Division. PCO Brooks could be an asset to that division in her ability to use the CJIS computer. She would require very little training in a position that is very detailed oriented. PCO Brooks would consider such a position if a comparable salary could be worked out.

I have reviewed the COMAR regulations as they pertain to disciplinary action related to job performance and performance appraisals. PCO Brooks has never received an overall rating of "needs improvement" or "unsatisfactory." All of the overall ratings have been "meets standards" and over the past three years her overall all rating has increased. Additionally, PCO Brooks has never received a rating of "unsatisfactory" in any of the performance standard or behavioral element.

PCO Brooks understands the importance being a reliable employee. She is willing to do her best to be reliable notwithstanding her current medical condition. As a result, I am requesting that PCO Brooks' employment options be reevaluated based on the information I have provided.

Again, thank you for the opportunity to be heard on Melody's behalf. If you need any additional information, do not hesitate to contact me.

Sincerely,

Michael E. Davey

Enclosure
cc:    PCO Melody Brooks



PARRIS N. GLENDENING
GOVERNOR

KATHLEEN KENNEDY TOWNSEND
LT GOVERNOR

STATE OF MARYLAND
MARYLAND STATE POLICE
1201 REISTERSTOWN ROAD
PIKESVILLE, MARYLAND 21208-3899
410-486-3101
TOLL FREE: 1-800-525-5555
TDD: 410-486-0677

COLONEL DAVID B. MITCHELL
SUPERINTENDENT

August 3, 2000

Michael E. Davey Esq.,
Schlachman, Belsky & Weiner, P.A.
Sun Life Building - Tenth Floor
20 South Charles Street,
Baltimore, Maryland 21201

Re: PCO II Melody L. Brooks

Dear Mr. Davey:

I have carefully reviewed your correspondence of July 14, 2000 to Major Vernon Herron concerning PCO Brooks and her continued employment options with the Maryland State Police. The decision in this matter has not yet been finalized, but I believe the following relevant facts are important for you to be aware of at this juncture:

- Our medical expert has determined that PCO Brooks is incapable of performing the essential job functions of her position and she will never be able to do so, with or without a reasonable accommodation;
- PCO Brooks is a satisfactory employee WHEN she appears for work. Her use of sick leave and her inability to work an evening or early morning shift severely affects Barrack operations and the morale of the other PCO employees who are adversely affected by her unsatisfactory attendance and chronic medical condition. PCO Brooks is in a fully funded position which requires shift work and regular attendance;
- PCO Brooks currently enjoys compensation at State Pay Grade 11 and there are no data entry clerical positions in the Department or the State at that level.

When we complete our final determination in this matter you will be so informed. Thank you for your understanding and cooperation in this employee's interests.

Sincerely,

H. Frank Rayne
Director of Personnel Services

*"Maryland's Finest"*

PLAINTIFF'S EXHIBIT G

MARYLAND STATE POLICE

TO: Phil, Melody, Hope, Ja e, Elaine

FROM: Dan

DATE September 25, 2000

X For your information
As requested
Approve and return
Note and return
X See me

X Take charge o
For additional
For comment / recommendation
Give me facts so I can answer
Prepare reply for my signature

**REF: Modified Schedules for October and November 2000**

Attached please find the modified schedules for the next two months.

This is a temporary schedule. When Phil's foot is healed, we can either switch back to the old schedule or continue with the modified schedule. We can decide that as a group when the time comes.

There are undoubtedly problems and errors with this new schedule. In particular, the transition from the current schedule at the end of September to the new schedule at the beginning of October is awkward. Also, the break at Thanksgiving is a little different from what was previously in the leave book. I'm working on December, and I anticipate some minor changes. I'm open to suggestions.

Let me know as soon as possible any errors (and applicable solutions). I will make every effort to accommodate you. Thanks.

PLAINTIFF'S
EXHIBIT
H

FORM 17

**DUTY SCHEDULE** Waterloo **Month** October 2000

11-1 | 11-2 | 12-1

| Rank | NAME | Car # | Patrol A… | Leave Gr… | 1 S | 2 M | 3 T | 4 W | 5 T | 6 F | 7 S | 8 S | 9 M | 10 T | 11 W | 12 T | 13 F | 14 S | 15 S | 16 M | 17 T | 18 W | 19 T | 20 F | 21 S | 22 S | 23 M | 24 T | 25 W | 26 T | 27 F | 28 S | 29 S | 30 M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Hicks, D.F. | | | | X | E | L | E | E | E | X | X | E | E | E | E | E | E | E | X | X | X | V | V | V | V | E | X | X | X | E | E | E | [illegible] |
| | Bell, H.D. | | | | E | X | X | L | L | L | X | X | L | L | L | L | L | X | X | L | L | L | L | L | L | L | X | X | X | L | L | L | L | L |
| | Fister, P.N. | | | | N | N | N | N | N | H7 | X | X | N | N | N | N | N | X | X | N | N | N | N | N | X | X | N | N | N | N | N | N | N | X |
| | Brown, E.S. | | | | L | L | X | X | X | N | N | N | E | 10-85 14Hs | E | E | H7 | X | X | E | E | E | E | E | E | E | L | L | L | X | X | X | X | E |
| | Bradford, J.L. | | | | X | E | E | X | E | E | L | L | L | X | X | X | H8 | N | N | E | E | E | TRN | E | X | X | E | E | E | E | E | X | X | L |
| | Brooks, M.L. | | | | X | E | E | E | E | E | E | E | X | X | X | L | L | L | L | L | X | X | TRN | H8 | N | N | E | E | E | E | H9 | X | X | V |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | SECY'S | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | Bergman, M.E. | | | | X | | | | | | X | X | | | | | | X | X | | | | | | X | X | | | | | | X | X | |
| | Johnson, C.D. | | | | X | | | | | | X | X | | | | | | X | X | | | | | | X | X | | | | | | X | X | |
| | Richard, M.L. | | | | X | | | | | | X | X | | | | | | X | X | | | | | | X | X | | | | | | X | X | |



DUTY SCHEDULE Waterloo Month November 2000

12-2 13-1

| Name | W 1 | T 2 | F 3 | S 4 | S 5 | M 6 | T 7 | W 8 | T 9 | F 10 | S 11 | S 12 | M 13 | T 14 | W 15 | T 16 | F 17 | S 18 | S 19 | M 20 | T 21 | W 22 | T 23 | F 24 | S 25 | S 26 | M 27 | T 28 | W 29 | T 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Hicks, O.F. | N | E | $H^{8}$ | E | E | X | X | E | E | E | X | X | E | E | E | V | V | X | X | V | E | E | $H^{9}$ | N | E | E | X | X | X | E |
| Bell, H.D. | X | L | L | L | L | X | N | N | N | $H^{8}$ | X | X | L | L | L | L | L | X | X | L | L | L | $H^{9}$ | E | X | X | L | L | L | L |
| Fister, P.N. | X | N | N | N | N | N | X | X | X | N | N | N | N | N | N | N | $H^{8}$ | X | X | N | N | N | N | $H^{9}$ | X | X | N | N | N | N |
| Brown, E.S. | E | E | E | V | V | X | X | X | L | L | L | L | L | X | X | X | N | N | N | E | E | E | E | $H^{8}$ | X | X | P | P | CT | CT |
| Bradford, J.L. | L | L | L | X | X | E | E | E | E | E | E | E | X | X | X | L | L | L | L | L | X | X | X | $H^{9}$ | N | N | E | E | E | E |
| Brooks, M.L. | V | E | E | X | X | L | L | L | L | L | X | X | E | E | E | E | E | E | E | X | X | X | L | L | $H^{10}$ | L | L | X | X | |
| SECY'S | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Bergman, M.E. | | | | X | X | | $H^{8}$ | | | $H^{9}$ | X | X | | | | | | X | X | | | | $H^{10}$ | $H^{8}$ | X | X | | | | |
| Johnson, C.D. | | | | X | X | | $H^{8}$ | | | $H^{9}$ | X | X | | | | | | X | X | | | | $H^{10}$ | $H^{11}$ | X | X | | | | |
| Richard, M.L. | | | | X | X | | $H^{8}$ | | | $H^{9}$ | X | X | | | | | | X | X | | | | $H^{11}$ | $H^{11}$ | X | X | | | | |

PLAINTIFF'S EXHIBIT I

DATE: July 25, 2001

COMPLAINANT: Melody L. Brooks
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

Ms. Melody L. Brooks is a 43 year white female. Ms. Brooks has been employed by the Maryland State Police as a Police Communications Officer (PCO) since August 10, 1977. She is currently assigned to the Maryland State Police, Waterloo Barrack, Jessup, Howard County, Maryland.

On June 7, 2000, PCO Brooks was ordered by her supervisor to attend a meeting at the Maryland State Police Headquarters Building to discuss various options available to her as they related to her current and future work status. At that meeting, PCO Brooks was advised that the Maryland State Police Medical Director had determined that PCO Brooks was unable to perform the essential job function of her position, with or without accommodations. PCO Brooks was offered three options:

1. Submit an application for disability retirement benefits and remain on "light duty" until the MSRA renders a decision;

2. Complete an Application for Employment (MS-100) for alternative placement with other State agencies;

3. Tender her resignation no later than July 1, 2000.

PCO Brooks was advised that failure to select one of the above options by June 21, 2000, may result in the termination of her employment **(EXHIBIT 1)**. The Agency was advised at that time that PCO Brooks was not currently on "light duty" and had not been on "light duty" since May 2000.

In July 2000, PCO Brooks' attorney, Michael Davey, met with Major Herron of the Maryland State Police regarding PCO Brooks' employment status. The "options" made available to PCO Brooks were discussed along with several alternative options. These alternative options included permanent shift assignment or a transfer to another position that does not require rotating shifts. One suggestions might be a transfer to the Maryland State Police, Licensing Division. PCO Brooks would be highly qualified for this position and it would not require rotating shifts. PCO Brooks was also willing to take a reduction in salary if required. These alternative options were requested after PCO Brooks' physician advised that a more stable work schedule could improve her use of earned sick leave. At the conclusion of that meeting, Mr. Davey wrote Major Herron a letter requesting that the Agency reconsider its position **(EXHIBIT 2)**.

On August 3, 2000, my attorney received a letter from H. Frank Rayne, Director of Personnel Services for the Maryland State Police. Mr. Rayne advised the Agency beli[illegible]

PLAINTIFF'S EXHIBIT 5

1. PCO Brooks is incapable of performing the essential job functions of her position and will never be able to do so.

2. Her use of sick leave severely effects Barrack operations and the morale of other PCO employees who are adversely affected by her unsatisfactory attendance and chronic medical condition.

3. There are no data entry clerical positions in the Department or State at a level 11.

Mr. Rayne stated that a final determination had not bee made in PCO Brooks' employment status **(EXHIBIT 3)**. In a later follow-up telephone call to Mr. Davey, Mr. Rayne advised that PCOs are required to work rotating shifts and there are no accommodations made. Mr. Rayne also advised that there were no vacant positions available for PCO Brooks in the Licensing Division.

In August 2000, PCO Brooks supervisor, Dan Hicks, prepared PCO Brooks' mid-cycle, Performance Planning and Evaluation Program (PEPP). The mid-cycle evaluation was not given to PCO Brooks until September 2000. PCO Brooks was advised by Dan Hicks and F/Sergeant William Hayes that the reason she did not receive her evaluation in August was because Colonel Arrington, Lieutenant Gardner and Frank Rayne ordered Dan Hicks to lower her evaluation rating to unsatisfactory. Dan Hicks refused to change the rating.

In September 2000, Dan Hicks, PCO supervisor, revised the schedule for the PCOs assigned to the Waterloo Barrack. This revised schedule was a result of the Barrack making medical accommodations for PCO Phil Fister, a white male. PCO Fister was assigned a permanent shift as a result of a current medical condition. This is accommodation was denied to PCO Brooks just one month prior **(EXHIBIT 4)**.

In November 2000, Dan Hicks revised the schedule again. The revised schedule had PCO Fister, a white male, continuing a permanent shift and Dan Hicks, a white male, being scheduled for a permanent shift. The reason Dan Hicks was schedule for a permanent shift was due to his responsibilities, however, Dan Hicks told several employees that it was due to a medical condition, chest pains Again, this was after PCO Brooks, a white female, was advised that PCOs must work a rotating schedule and no accommodations would be made **(EXHIBIT 5)**.

In April 2001, PCO Elaine Brown, assigned to the Waterloo Barrack, an African-American female, requested and received a transfer to the Maryland State Police, Licensing Division. This position is a Monday through Friday, non-rotating shift position. This is the same Division where PCO Brooks requested a transfer in July 2000, but was advised that there were no positions available.

PCO Brooks believes that she is being discriminated against by the Maryland State Police and certain officers including: Lt. Colonel William Arrington, Major Vernon Herron, Lieutenant Gardner, and Mr. H. Frank Rayne. PCO Brooks believes that she is being discriminated as a result of her sex and race. She is being treated differently then males and African-American

females assigned to the same Barrack. Additionally, PCO Brooks believes that she has been denied the opportunity to receive reasonable accommodations as a result of her medical condition.

The Maryland State Police and certain members have discriminated against PCO Brooks, a white female, by attempting to terminating her employment and denying her requests for a permanent shift and a transfer. The discrimination occurred when the Maryland State Police and certain officers made reasonable accommodations for white male PCOs pertaining to permanent shifts and African American females pertaining to job assignments and transfers.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Baltimore District Office

10 S. Howard Street, 3rd Floor
Baltimore, MD 21201
PH: (410) 962-3932
TDD: (410) 962-6065
FAX: (410) 962-4270
EEOC Web Site: www.eeoc.gov

SEP 2 5 2001

Ms. Melody L. Brooks
P.O. Box 334
Jessup, Maryland 20794

Re: Charge No.: 120-A1-0972
Brooks v. Maryland State Police

Dear Ms. Brooks:

You filed a charge alleging discrimination prohibited by one of the following laws enforced by the Equal Employment Opportunity Commission (EEOC): Title VII of the Civil Rights Act of 1964, as amended; Age Discrimination in Employment Act of 1967, as amended (ADEA); Americans with Disabilities Act of 1990 (ADA); and/or the Equal Pay Act of 1963, as amended (EPA).

All charges filed are assessed upon receipt into the office and at various points thereafter as to whether there is evidence supporting the finding of a violation. The information obtained by the EEOC does not establish that your employer's actions violated the employment discrimination laws. The EEOC reviewed the evidence, including that which you provided and/or the evidence provided by your employer. The evidence is insufficient to establish a violation and there is little prospect that further investigation of your allegations would result in a finding of a violation.

You now have the right to file a lawsuit against the named respondent within 90 days from the date you received the enclosed Dismissal and Notice of Rights. If you filed a charge under the Equal Pay Act, the time limit for filing is, in most cases, two years from the date of the earliest violation. If you fail to file within the appropriate time, regardless of the law under which you filed your charge, you will lose your right to pursue this matter in court.

Sincerely,

James L. Lee
District Director

Enclosure:
Dismissal and Notice of Rights

PLAINTIFF'S
EXHIBIT
K

## [DIS]MISSAL AND NOTICE OF RIGHT[S]

To: Melody L. Brooks
P.O. Box 334
Jessup, Maryland 20794

From: U.S. Equal Employment Opportunity Commission
Baltimore District Office
10 S. Howard Street, 3rd Floor
Baltimore, Maryland 21201

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 120-A1-0972 | Wilma J. Scott, Supervisory Investigator | (410) 962-0887 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that afforded full relief for the harm you alleged.

[ X ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)* ____________________

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. **Your lawsuit must be filed WITHIN 90 DAYS from your receipt of this Notice;** otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

[signature]

James L. Lee, District Director

SEP 2 5 2001

*(Date Mailed)*

Enclosure(s)

cc: Lt. Susanne Mazan
EEO Officer, Office of Fair Practices
Maryland State Police
1201 Reisterstown Road
Pikesville, Maryland 21208

PLAINTIFF'S
EXHIBIT

P.2/5

# Job Observation Report

| | |
|---|---|
| To: PCO BROOKS | Date: 08-07-02 |
| From: 1/SGT HAMM | Date Observed: 08-07-02 |
| Employees Supervisor: PCS MILLER | Location: BARRACK |

Type of Observation: ___ Performance XX Report or Form

## Trooper First Class Performance Factors

___ General Duties ___ Time Management/ Supervision ___ Communications

___ Report Writing / Forms Completion ___ Use & Maintenance of Equip./ Personal Appearance

## Corporal / Sergeant Performance Factor

___ Supervision ___ Administrative Duties ___ General Duties

___ Communications ___ Use & Maintenance of Equipment / Personal Appearance

Observed Performance: ___ Favorable X Unfavorable

## Performance Aspects

___ Additional Information Required

___ Contacts With Agency Personnel

___ Contacts with Public

XX Content

___ Court Testimony

___ Equipment Use

___ Grammar

___ Initiative

___ Investigative Technique

___ Investigation Thoroughness

XX Knowledge of Rules and Regulations

___ Legibility

___ Overdue Report

___ Personal Appearance

___ Punctuality

___ Spelling

___ Time Management

XX Other: _____INACCURATE(AND/OR FALSE REPORT)

PLAINTIFF'S EXHIBIT M

Type of Report, CC Number (If Applicable): MSP FROM #31 WORK AND LEAVE REPORT PERIOD 9-1

Comments: A REVIEW OF MSP FORM #31 FOR PCO M. BROOKS REFLECTING PAY PERIOD 09-01 SHOWED PCO BROOKS AS HAVING WORKED LATE SHIFT ON 08-05-02. THE MASTER LEAVE SCHEDULE ALSO REFLECTED HER AS WORKING LATE ON THAT DATE. PCO BROOKS WAS IN FACT ON SICK LEAVE ON 08-05-02 AS INDICTED ON THE PATROL SCHEDULE FOR THAT DATE AND AS VERIFIED BY HER AND THE SUPERVISOR TO WHICH SHE REPORTED THE LEAVE. PCO BROOKS SUBSEQUENTLY SUBMITTED HER SIGNED FORM#31 HAVING FAILED TO ACCURATELY RECORD HER WORK/LEAVE HOURS ON 08-05-02. PCO BROOKS WILL TAKE ABSOLUTE CARE IN COMPLETING THIS FORM IN THE FUTURE AS A FAILURE TO DO SO MAY INDICATE AN INACCURATE OR AT WORSE INTENTIONALLY DECEPTIVE REPORT.

Employee's Comments (If Any): 1/Sgt. Hamm,
As is recorded under the comments section, I did verify

MSP 164 A

over →

phone conversation when you called me at home on 8/9/02 that I had pre-written my form 31 as I always do. I advised you that I had called Sgt. Carhart at approximately 0100 hrs. on 8/7/02 and asked him if he could please get my form 31 out of my file drawer and check it, that I forgot all about it that there had been a situation at the barrack prior to getting out and I had simply forgotten it. I also admitted to you that I had forgot about the block for 8/5/02 needing to be changed, but didn't Sgt. Carhart make the change when he checked it against the Master leave book. You then asked me, "You asked Sgt. Carhart to change it?" I then again admitted I had forgot about it and again asked if Sgt Carhart made the change. I never received a reply to that on the phone. I now see as reported in your comments, you state that the master leave schedule did not reflect the change. You also state that after I notified I was on sick leave I subsequently submitted my form 31 having failed to accurately record that leave day. In fact my form 31 was turned in and checked approximately 9 hours prior to your call to my home and to me admitting to my mistake. I feel that I am being unfairly given the 164A for a mistake, when your own comments admit there was a mistake on your part, because 48 hours after I had taken the sick leave the master leave schedule still didn't show the change, indicated I had worked L shift and if that mistake hadn't been made Sgt Carhart would have known to change my form 31, which is my understanding why the duty officers check form 31's against the leave book, "to correct errors". I can't help but feel that this is being made into an issue because of the lawsuit I have filed against the department. I can't believe you would put in writing that in fact the leave book was not correct and if it had been this would not have had to be made into anything and it need not to have occurred.

Respectfully,
PCO II M.L. Brooks

c: Major K. Gray MSP Pikesville, Fair Practice Unit
c: Lt. T. Gardner
c: PCS Miller
: Schlachman, Belsky & Weiner. Baltimore, Md.

# Maryland State Police
# Job Observation Report

| | |
|---|---|
| To: PCO BROOKS | Date: 08-12-02 |
| From: 1/SGT HAMM | Date Observed: 08-12-02 |
| Employees Supervisor: PCS MILLER | Location: BARRACK |

Type of Observation: X Performance X Report or Form

**Trooper First Class Performance Factors**

___ General Duties ___ Time Management/ Supervision ___ Communications

___ Report Writing / Forms Completion ___ Use & Maintenance of Equip./ Personal Appearance

**Corporal / Sergeant Performance Factor**

___ Supervision ___ Administrative Duties ___ General Duties

___ Communications ___ Use & Maintenance of Equipment / Personal Appearance

Observed Performance: ___ Favorable XX Unfavorable

**Performance Aspects**

___ Additional Information Required
___ Contacts With Agency Personnel
___ Contacts with Public
___ Content
___ Court Testimony
___ Equipment Use
___ Grammar
___ Initiative
___ Investigative Technique
___ Investigation Thoroughness
___ Knowledge of Rules and Regulations
___ Legibility
___ Overdue Report
___ Personal Appearance
___ Punctuality
___ Spelling
___ Time Management
XX Other: INSUBORDINATION

Type of Report, CC Number (If Applicable): 164A

Comments: PCO BROOKS, HAVING RECENTLY RECEIVED A NEGATIVE 164A FOR POOR JOB PERFORMANCE FELT COMPELLED TO RESPOND TO SAME WITH INSUBORDINATE COMMENTARY. SHE IS ADMONISHED THAT FUTURE OCCURRENCES WILL RESULT IN PROGRESSIVE DISCIPLINE.

Employee's Comments (If Any):

MSP 164 A

PLAINTIFF'S
EXHIBIT
N

DEPARTMENT OF MARYLAND STATE POLICE

TO PCO Brooks DATE August 12, 2002

FROM 1/Sgt SS Hann

XX For your information
___ As requested
___ Approve and return
___ Note and return
___ See me

XX Take charge of
___ For additional information
___ For comment/recommendation
___ Give me facts so I can answer
___ Prepare reply for my signature

**RE: Negative 164A Job Observation Report**

I reviewed with disappointment, the insubordinate commentary attached to your recently issued negative 164A regarding your failure to submit an accurate and factual report. Non-disciplinary forms, such as your 164A are utilized by the Department to provide guidance, instruction and correction. From your response, it is obvious that you gleaned nothing from the report. I will, therefore, reiterate that lesson for you here, and instruct you further.

*You*, Ms.Brooks, are solely responsible for the content of reports that you submit. That you desire others to be taken to task for your shortcomings is an extrapolation of responsibility that occurs frankly, only in government work. Knowing that you track the minutia of your marginal leave balances so they may be expended upon accrual, I found your "oversight" to be suspicious at best. That counseling you for your "oversight" has added to some "persecution paranoia" that you may have is unfortunate. The intent is to assist you in not repeating the "mistake". You have not been singled out for special treatment here, Ms. Brooks. The converse is true. You are not special and when you submit erroneous reports you will be, as other are, subject to the progressive disciplinary procedures of the Department.

Be thankful for your government job, Ms. Brooks. As the beneficiary of a broken system, the State Police accommodates you without precedent, allowing you to expend leave at disturbing rates and in suspect combinations. Both, to the absolute detriment of your position here at the Watertloo Barrack and at great financial expense to the State of Maryland. Such patterns would collapse instantly under even modest scrutiny in the private sector.

Further, If you desire to evaluate the work of Sgt. Carhart or myself, your career progression has fallen woefully short. Submit another insubordinate communication to me and you will be disciplined summarily.

**MARYLAND STATE POLICE**

DATE 8-15-02

**PERSONAL & CONFIDENTIAL**

| TO/FROM | | TO/FROM | |
|---|---|---|---|
| / | Superintendent | / | Director, OBLFA |
| / | Chief, F.O.B. | / | Commander, H.R.D. |
| / | Chief, S.S.B. | / | Commander, Training Div. |
| / | Chief, Admin. Services Bureau | / | Commander, P.A.U. |
| / | Director, SOPSIM | / | Legal Counsel Unit |
| XX/ | ~~Commander/Director~~ Lt. T. D. Gardner, Cmdr., Waterloo Bk. | | |
| /XX | Lt. J. W. Herman, Cmdr., F.P.U. | | |
| / | | | |

REF: Fair Practices Unit Inquiry

| | |
|---|---|
| | Reply / Return By / AS SOON AS POSSIBLE |
| XX | For Your: **Information**/Comments/Approval/Signature/File (circle) |
| | Prepare Reply for My Signature |
| | Prepare reply over Your Signature, Copy to |
| XX | Take Appropriate Action |
| | As requested |
| | See Me |

The Fair Practices Unit has received a request from PCO M. Brooks for assistance regarding allegations of unfair treatment, harassment, and hostile work environment. The allegations identify the Waterloo Barrack command staff as the accused. This will serve as a formal notification to advise you that the Fair Practices Unit will be conducting an inquiry regarding the matter.

If there are, in fact, incidents of unfair treatment occurring, you are hereby advised that such conduct must cease and desist immediately. Additionally, you are cautioned against any acts of retaliation or other measures that might be construed as retribution for the aforementioned complaint. I trust that you will make every effort to prevent the alleged unwanted course of conduct from occurring and caution others likewise.

Should you have any questions regarding this matter, I may be contacted at (410) 653-4379. Thank you, in advance, for your assistance.

Form 17A (Rvsd 5/92) ___ Attachment ___

CC To: PCO M. Brooks
Major K. L. Gray

PLAINTIFF'S
EXHIBIT
O



CONFIDENTIAL

ROBERT L. EHRLICH JR.
GOVERNOR

MICHAEL S. STEELE
LT. GOVERNOR

STATE OF MARYLAND
MARYLAND STATE POLICE
1201 REISTERSTOWN ROAD
PIKESVILLE, MARYLAND 21208-3899
410-486-3101
TOLL FREE: 1-800-525-5555
TDD: 410-486-0677
**Fair Practices Section**

COLONEL EDWARD T. NORRIS
SUPERINTENDENT

**July 23, 2003**

**Disposition Report**

**TO:** **PCO II Melody Brooks, Motor Vehicle Division**
**Lt. Tom Gardner, Cmdr., Rockville Barracks**
**F/Sgt. Steve Hamm, Asst. Cmdr., Golden Ring Barracks**

**FROM:** **Lt. Laura L. Herman, Cmdr., Fair Practices Section**

**In the Matter of:** **Agency Case #FP-02-013**

**PCO II Melody Brooks (Complainant)**
**vs.**
**Lt. Tom Gardner (Accused)**
**F/Sgt. Steve Hamm (Accused)**

**ALLEGATION**

The Complainant alleges that both of the Accused have induced a threatening and harassing work environment at the Waterloo Barracks via their behavior, actions, and influence over other personnel assigned to the barracks. The Complainant cited a number of instances in which she felt she was treated in a manner that she perceived as harassing and hostile. Some of those instances include, but are not limited to, a series of unfavorable job observation reports issued to her within a short time period.

**FINDINGS**

Due to the number of incidents, each incident in question is individually identified and addressed below.

Regarding a negative Job Observation Report (Form 164A) in reference to an alleged inaccurate Employee Work and Leave Report (Form 31) PCO Brooks' submitted:

It is not disputed that the Form 31 was incorrect, however, the intentions of how the inaccurate Form 31 developed and in the manner under which it was submitted

PLAINTIFF'S
EXHIBIT

are disputed. It has been corroborated that when the Complainant was contacted by one of the Accused inquiring about the Form 31, the Complainant immediately and voluntarily stated she forgot to revise the Form 31 prior to its submission; as it was completed and submitted in advance of the actual working dates. There is no tangible evidence to indicate the Complainant intentionally submitted an inaccurate Form 31 and is deemed to have occurred in error.

Regarding a subsequent negative Form 164A in reference to allegations of insubordination:

The Complainant included remarks on the initial negative 164A under the section identified as "Employee's Comments (If Any)." The remarks explained the chain of events from the Complainant's perception. The Assistant Commander perceived the comments as insubordinate and issued a second negative 164A coupled with a Form 17 containing threatening language.

An employee has the right to make their own comments on a Form 164A especially when the Form 164A has a section titled "Employee's Comments (If Any)," and is entitled to comment without fear of retaliation. This section gives the employee an opportunity to address the incident from their perspective. No foul language was used by the Complainant and she signed her version with "Respectfully." Additionally, the interpretation of the Complainant's comments are subjective. The assistant commander interpreted them as insubordinate while the Complainant's supervisor interpreted them to the contrary.

The accompanying Form 17 contains sentences that are irrelevant to the situation and, as admitted by the Accused, is closed with a threatening comment; although, the Accused's intentions of the "threat" was to teach respect. The Complainant interpreted and perceived the Form 17 from as a threat. Direct evidence substantiates the Form 17 as threatening and containing irrelevant and inappropriate commentary.

Regarding the issue of the negative Form 164A in reference to the storage notification teletype:

Witness testimony provided evidence that the Complainant sent the original notification, however, it was rejected by the receiving destination later during the shift. Witness testimony supports the actions of the Complainant and other barrack personnel in their attempts to identify the accurate recipient's destination code and the difficulties they had in verifying the accurate code. Witness testimony also confirms that the PCS did state, on more than one occasion, that he was not going to send the teletype. Supporting testimony indicates that the initial failure to send the teletype began with the PCS and is exacerbated further by the PCS' unprofessional actions with the investigating trooper.

Regarding the blanket Form 17 distributed by the PCS in response to an allegation that the Complainant allowed newborn wildlife to urinate on the carpet in the radio room:

> Witness testimony could not confirm that the Complainant knowingly allowed this to occur. Circumstantial evidence indicates there is probable cause to suspect that the newborn wildlife was most likely the cause of the foul odor in the radio room. Barrack personnel took appropriate steps in attempt to discretely resolve the issue by distributing a generic Form 17 to all personnel who have access to the radio room. The Form 17 did not identify, nor place blame, on any specific personnel and is deemed to be appropriate.

Regarding the negative Form 164A in reference to a fatal teletype:

> Witness testimony confirmed that the environment at the barrack was very tense; there were numerous errors of the coding of the teletype; and there was an exchange of unprofessional comments between the personnel in the barrack. However, it is inconclusive that any swearing was spoken. Although, what exactly was said is ambiguous, the submitted written statements, of personnel who were present during the incident, describe the events on the evening of September 12, 2002 with relative accuracy.

Regarding the chain of events involving the Complainant's use of sick/stress leave:

> The Complainant did make proper notification of her leave status and asked that the information be forwarded to the barrack commander. Witness testimony corroborated that the barrack commander instructed a member of the barrack to call the Complainant at home and advise her she cannot take sick leave because she didn't have any earned leave to take. Further witness testimony corroborated that the barrack commander made other inquiries regarding the Complainant's leave status and in spite of these inquiries, the Complainant's schedule reflected she was absent without leave (LAW).
>
> Since the barrack had not received the donated sick leave paperwork, the Complainant was carried as LAW on the master leave schedule. This action is within Department policy and procedure. However, witness testimony also revealed that both the Accused made comments stating that the Complainant was AWOL and that revisions of scheduled shifts and personnel naturally occur when working with someone like the Complainant. Direct evidence indicates that the Complainant was not the cause of a revision to the schedule and the comments by the Accused are deemed inappropriate, inaccurate, superfluous, and reflect negatively upon the Complainant.

## CONCLUSION

Although there are appropriate justifications for some of the negative material administered to the Complainant, the direct and circumstantial evidence corroborated by witness testimony substantiates that the totality of circumstances, and some actions taken toward the Complainant, can be deemed suspicious. There are inconsistencies in the Accused's statements; some of their actions do not emulate their statements; nor are some of their actions consistent with the level of the infraction.

Direct and circumstantial evidence indicates a pattern of conduct one can deduct as harassment. The threatening statement in a Form 17 issued to the Complainant is qualified in itself to create a hostile work environment. This inquiry deducts that there is probable cause to conclude that the Complainant has been subjected to harassment and a hostile work environment.

## RECOMMENDATION

- Separation of all three individuals.
- Administratively address the inappropriate, inaccurate, and negative comments made by both the Accused.
- Remove from the Complainant's auxiliary file and/or personnel file the negative Form 164A and Form 17 dated August 12, 2002, in reference to the accusation of insubordination.
- Remove from the Complainant's auxiliary file and/or personnel file the negative Form 164A dated September 1, 2002, in reference to the storage notification teletype.
- Retain in the Complainant's auxiliary file and/or personnel file the negative Form 164A, dated August 7, 2002, in reference to the error on the Form 31.
- Retain in the Complainant's auxiliary file and/or personnel file the negative Form 164A, dated September 18, 2002, in reference to the Complainant's behavior on the evening of September 12, 2002.

*Reviewed by:*

[signature]

*Keven L. Gray, Major*
*Commander, Division of Professional Responsibility*





CONFIDENTIAL

ROBERT L. EHRLICH JR.
GOVERNOR

MICHAEL S. STEELE
LT. GOVERNOR

STATE OF MARYLAND
MARYLAND STATE POLICE
1201 REISTERSTOWN ROAD
PIKESVILLE, MARYLAND 21208-3899
410-486-3101
TOLL FREE: 1-800-525-5555
TDD: 410-486-0677
Fair Practices Section

COLONEL EDWARD T. NORRIS
SUPERINTENDENT

August 6, 2003

Disposition Report

TO: PCO II Melody Brooks, Motor Vehicle Division
Lt. T. Gardner, Cmdr., Rockville Barracks
PCS Joe Miller, Waterloo Barracks

FROM: Lt. L. Herman, Cmdr., Fair Practices Section

In the Matter of:

Agency Case #FPS-03-011

Waterloo Barracks Troopers (Complainant)
vs
Lt. Thomas Gardner (Accused)
PCS Joe Miller (Accused)

ALLEGATION:

On August 15, 2002, the Complainant filed a complaint with the Fair Practices Section alleging that she has been subjected to a series of incidents by both the Accused that she has perceived as unfair and harassing. Since the submission of the previous complaint, the Complainant alleges she has been subjected to a continued pattern of behavior by both the Accused that is retaliatory in nature and has created a hostile working environment.

The Complainant contends that her PEP ratings have been intentionally lowered in retaliation for previous complaints she has made against the commander of the barracks, and in relation to a pending law suit she has filed against the Department.

"Maryland's Finest"

PLAINTIFF'S
EXHIBIT
Q

**FINDINGS**

A thorough review of the observation logs for all PCO's assigned to the Waterloo Barracks, under the supervision of the Accused (Miller), revealed that the lateness of the issuance of the PEP ratings by the Accused (Miller) seems to be consistent with all the PCO's, however, there is supporting documentation that the Accused's (Miller) ratings are not consistent among all PCO's under his supervision.

Work and Leave records identified other PCO's at the Waterloo Barracks who have used as much leave at the Complainant, if not more, but have not been adversely affected by lowered PEP evaluation ratings. For example, in August 2001, PCO Fister was absent from work utilizing donated leave. According to the Accused (Gardner) a person cannot be rated if they are not at work. However, that philosophy was not applied to PCO Fister as it was applied to the Complainant, because PCO Fister received an "Exceeds Standards" PEP rating even though he did not work the last six months of 2001. The Complainant only worked approximately six weeks for both the Accused and received a Mid-Cycle rating that was lowered by 89 points to reflect "Needs Improvement." This is inconsistent and a clear evidence of unfair treatment.

Numerous errors on Work and Leave Reports (Form 31) have been returned from the MSP Leave Desk Coordinator, Tom Dentry, with comments regarding their inaccuracies. Despite the returned forms, the employees have not been issued negative job observation reports for those errors. Some of the errors involve employees claiming they worked a shift when, in fact, sick leave or some other form of leave was used.

During the interview with the Accused (Miller), it was confirmed that he stated he doesn't observe the Complainant's work because he doesn't work with the Complainant. However, when he was asked how he can fairly rate the PCO's when he doesn't work with them, he stated that he can tell which ones are doing their work, commenting that he makes mental notes of things, but doesn't document them. This method is unacceptable in determining evaluation ratings and justification for those ratings. As cited in the *Maryland Performance Planning and Evaluation Process User's Handbook*, Chapter 3, "Relying on memory increases the risk of inaccurate, incomplete, and missing information." The Accused (Miller) appears to be a substandard supervisor and negligent in his lack of direct observations.

There is direct witness testimony about adverse comments made by the Accused (Gardner) regarding the Complainant. These comments have been made prior to the Accused (Miller) assuming the position of the PCS and have continued to the present.

Regarding the Accused (Gardner) it has been corroborated that he has lied to various individuals (sworn and civilian) at the Waterloo Barracks. Thus, this is indication that he has an integrity flaw. Furthermore, his derogatory comments about the Complainant are inappropriate, unprofessional, and slanderous to the Complainant. His comments and actions against the Complainant symbolize his dislike for the Complainant and accordingly, bring into question his

motive. It is unmistakable and supported via direct evidence, that the Complainant is being treated differently for the same infractions made by other PCO's at Waterloo Barracks.

Furthermore, it has also been corroborated that the Accused (Gardner) has made specific comments about his displeasure with the PEP ratings of the Complainant. There is circumstantial evidence that the (Accused) attempted to influence a previous PCS in lowering the PEP ratings of the Complainant and evaluate the Complainant based on the Complainant's usage of paid leave, which is prohibited according to the guidelines set forth in the *Maryland Performance Planning and Evaluation Process User's Handbook.*

## CONCLUSION

The subjective and objective standard applied by the courts, in order to determine harassment when a tangible employment action has not occurred, specifies that the victim must perceive the harassment offensive and the harassment must create a working environment that a reasonable person would find hostile. This element can supported by the drastic change in the Complainant's PEP evaluations, the incursion of negative job observations reports, omitting the letter of appreciation, the inappropriate comments about the Complainant made by the Accused (Gardner), and his verbalization of his displeasure with the PEP ratings of the Complainant.

It is the determination of this inquiry that there is a nexus between the Complainant's participation in the complaint process and the treatment of the Complainant by both Accused in the above chain of events. Both of the Accused's behavior is disturbing, and if allowed to go unchecked, their behavior could place this Department in a position that is indefensible.

## RECOMMENDATION

Rescind the Mid-Cycle PEP evaluation dated March 10, 2003.

Maintain separation of both Accused and the Complainant

Rectify the PCO shortage at the Waterloo Barracks

At a minimum, address the supervisory deficiencies of the PCS

Settle the current status of the Complainant who is temporarily assigned to MVD

---

*Reviewed by:*

[signature]

*Major K. L. Gray*
*Cmdr., Division of Professional Responsibility*

ROBERT L. EHRLICH JR.
GOVERNOR

MICHAEL S. STEELE
LT. GOVERNOR

STATE OF MARYLAND
**MARYLAND STATE POLICE**
1201 REISTERSTOWN ROAD
PIKESVILLE, MARYLAND 21208-3899
410-486-3101
TOLL FREE: 1-800-525-5555
TDD: 410-486-0677

THOMAS E. "TIM" HUTCHINS
SUPERINTENDENT

January 21, 2004

SPECIAL ORDER NO. 15-04004

TO: PCO Melody L. Brooks, Waterloo Barrack

SUBJECT: Full Duty Status

Effective January 22, 2004, PCO Melody L. Brooks, Waterloo Barrack, will report to full duty status. The Commander, Waterloo Barrack, will ensure that PCO Brooks signs the employee acknowledgment of this Special Order immediately and returns it to the Medical Unit.

Phillip N. Phillips
Phillip N. Phillips, M.D.
Medical Director

cc: Commander, Waterloo Barrack

**EMPLOYEE ACKNOWLEDGMENT**

Signature: Melody L. Brooks Date: 1/22/04

*"Maryland's Finest"*

PLAINTIFF'S
EXHIBIT
R

## III. HEALTH CARE PROVIDER CERTIFICATION AND SIGNATURE
(To be completed by an authorized Health Care Provider)

Date of office visit: 01 / 23 / 04 Next scheduled office visit: ___/___/___

Diagnosis: * Anxiety + Depression

Prognosis: Fair

Regimen of treatment, if any: Trazodone 50mg q hs, Lexapro 10mg q hs, Crestor 10mg qd, Avapro 150mg q am, Compazine 5mg ii q 4h° prn, Albuterol 20mg Bns

*Optional, unless employee is now or will be applying for medical leave benefits available by the State of Maryland or the Maryland State Police (i.e., Leave Donation Programs, Workers' Compensation, Administrative/Accident Leave, etc.)

1. Is employee able to return to work and perform their essential job functions: [ ] Yes [X] No If no, go to #2
   If yes, what date? ___/___/___
   Dates employee was unable to report to work? ___/___/___ to ___/___/___ (inclusive)

***NOTE: Please contact the Maryland State Police, Medical Director on (410) 653-4300 if you have any questions concerning this employee's essential job functions.***

2. Is employee unable to work in any capacity? [ ] Yes [X] No
   a. If yes, beginning on what date? ___/___/___
      Anticipated return to duty date? ___/___/___
   b. If no, can employee perform administrative desk duties? [ ] Yes ✓No
      From ___/___/___ to ___/___/___ (inclusive)

   Restrictions: ______

3. Was the employee's condition directly caused by his/her employment with the Maryland State Police?
   [X] Yes [ ] No If yes, date of injury or onset of illness: 5 / 15 / 2000

I hereby certify I am a licensed medical practitioner and have satisfied and maintained the licensing requirements prescribed for my specialty. I further certify I have reviewed this patient's condition in a manner consistent with the prohibitions contained in regulations adopted by the State Board of Quality Assurance or its equivalent. My opinions are based on my personal review of the patient's examination, and the conclusions reached are based on a reasonable degree of medical certainty. I understand the Maryland State Police, Medical Director may contact me regarding the information certified herein.

Medical Practitioner's Signature: [signature] Date: 01 / 23 / 04

Printed Name: Soon Ja Kim MD Specialty: FAMILY PRACTICE

Telephone #: (410) 796 - 7730 Fax #: (410) 379-1537

Office Address: 5868 MAIN St ELKRIDGE MD 21075

PLAINTIFF'S EXHIBIT 5



ROBERT L. EHRLICH JR.
GOVERNOR

MICHAEL S. STEELE
LT. GOVERNOR

STATE OF MARYLAND
MARYLAND STATE POLICE
1201 REISTERSTOWN ROAD
PIKESVILLE, MARYLAND 21208-3899
410-486-3101
TOLL FREE: 1-800-525-5555
TDD: 410-486-0677

THOMAS E. "TIM" HUTCHINS
SUPERINTENDENT

February 5, 2004

PERSONNEL ORDER NO: 01-04125

TO: Chief, Operations Bureau; Legal Affairs Section; Personnel Services Unit; Medical Unit; Education & Training Section; Commander, Waterloo Barrack; Ms. Melody Brooks

SUBJECT: Restricted Duty Status

Effective **February 6, 2004**, Ms. Melody Brooks, Waterloo Barrack, will be placed on restricted duty through **March 6, 2004**. Ms. Brooks will report to the Commander, Waterloo Barrack and is restricted to performing **administrative duties only**.

During this period of restricted duty, Ms. Brooks will be monitored by the Department's Medical Director, Dr. Phillip N. Phillips. Prior to the expiration date of the Personnel Order or every 30 calendar days, whichever is earlier, Ms. Brooks will submit to the Attendance Control Supervisor, a "Certificate of Illness or Disability" certifying continued restricted duty status. A final "Certificate of Illness or Disability" and approval by the MSP Medical Director is required prior to Ms. Brooks returning to full duty. **All medical leave absences of more than 5 consecutive work days will be reported to Ms. Melinda Riley, Restricted Duty Coordinator, Medical Unit, at 410-653-8366, by the Attendance Control Supervisor.** The Commander, Waterloo Barrack, will ensure that Ms. Brooks signs the employee acknowledgment of this Personnel Order and returns it to the Restricted Duty Coordinator within 10 days of the issue date.

This Order supersedes all other orders in conflict therewith.

Thomas E. Hutchins
Superintendent

TEH:SLH:mdr

Melody L. Brooks
Employee Acknowledgment

2/6/03
Date

PLAINTIFF'S EXHIBIT
T