IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELODY L. BROOKS                         *
PO Box 334                               *
Jessup, Maryland 20794                   *
                                         *
    Plaintiff                            *
                                         *
v.                                       *
                                         *
MARYLAND STATE POLICE                    *   Civil Action No.: CCB-01-4003
1201 Reisterstown Road                   *
Pikesville, Maryland 21208               *
                                         *
    Serve on: [Col. David Mitchell       *
              Superintendent]          *
                                         *
    <u>Col. Thomas E.</u>                   *
    <u>Hutchins,</u>                        *
    <u>Superintendent</u>                   *
                                         *
    Defendant                            *
                                         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## AMENDED COMPLAINT

Melody L. Brooks, by her attorneys Michael Marshall and Schlachman, Belsky & Weiner, P.A., files this Complaint of employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 <u>et seq.</u>

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1343(4), 28 U.S.C. § 1331. Venue of this Court is invoked pursuant to 28

U.S.C. § 1391(b), this being an action not founded on diversity of citizenship, and the District of Maryland being the judicial district in which all parties reside.

## PARTIES

2. The Plaintiff Melody L. Brooks, is a [43] 46 year old, Caucasian, female citizen of the United States residing in Jessup, Maryland. Melody L. Brooks has been employed by the Maryland State Police as a Police Communications Officer ("PCO") since August 10, 1977. At the time of the incident in question, Ms. Brooks was assigned to the Waterloo Barrack of the Maryland State Police, in Jessup, Maryland.

3. The Defendant Maryland State Police ("MSP"), is an agency of the State of Maryland and regularly employs more than fifteen persons.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. PCO Brooks filed a timely charge of discrimination with the Baltimore District Office of the United States Equal Employment Opportunity Commission ("EEOC") on July 25, 2001. A copy of that complaint is attached hereto as Exhibit A.

5. On September 25, 2001, the District Director for the EEOC forwarded a letter to PCO Brooks indicating the EEOC was unable to conclude the information established a violation. As such, the EEOC elected not to pursue any further investigation. See Exhibit B and attached Right to Sue Letter.

6. On July 1, 2004, PCO Brooks filed an additional, and timely, Charge of Discrimination with the Baltimore District Office of the United States Equal Employment Opportunity Commission. See Exhibit C.

7. On August 2, 2004, PCO Brooks received a Dismissal and Notice of Rights from the EEOC. The EEOC stated that it was closing its file on the charge for the following reason:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

See Exhibit D.

## ALLEGATIONS COMMON TO ALL COUNTS

8. PCO Brooks has been employed by the Maryland State Police as a Police Communications Officer ("PCO") since August 10, 1977. At the time of the incident in question, PCO Brooks was assigned to the Waterloo Barrack of the Maryland State Police, in Jessup, Maryland.

9. PCO Brooks suffers from a medical condition called endometriosis which causes her to suffer severe cramping, painful menstruation, and severe abdominal or low back pain and this medical condition substantially limits her major life activities. In the alternative, the MSP perceives her condition as a disability.

10. On June 7, 2000, PCO Brooks was ordered by her supervisor to attend a meeting at the Maryland State Police Headquarters Building to discuss various options available to her as they related to her current and future work status.

11. At that meeting, PCO Brooks was advised that the Maryland State Police Medical Director had determined that PCO Brooks was unable to perform the essential job function of her position, with or without accommodations. PCO Brooks was offered

three options: (1) Submit an application for disability retirement benefits and remain on "light duty" until the MSRA renders a decision; (2) complete an Application for Employment (MS-100) for alternative placement with other State agencies; or (3) tender her resignation no later than July 1, 2000.

12.     PCO Brooks was advised that failure to select one of the options in paragraph 9 above, by June 21, 2000, may result in termination of her employment. See June 7, 2000 Meeting Notes attached hereto as Exhibit E.

13.     The Department was advised at that time that PCO Brooks was not currently on "light duty" and had not been on "light duty" since May 2000.

14.     In July 2000, PCO Brooks' attorney met with Major Herron of the Maryland State Police regarding PCO Brooks' employment status. The options made available to PCO Brooks were discussed along with several alternative options. These alternative options included a permanent shift assignment or a transfer to another position that does not require rotating shifts, including a transfer to the Maryland State Police, Licensing Division, for which PCO Brooks would be highly qualified. PCO Brooks was willing to take a reduction in salary if required.

15.     These alternative options were requested after PCO Brooks' physician advised that a more stable work schedule could improve her use of earned sick leave. At the conclusion of the June 7, 2000, meeting, PCO Brooks' attorney wrote a letter to Major Herron requesting that the Department reconsider its position. The July 14, 2000, letter is attached hereto as Exhibit F.

16.     On August 3, 2000, H. Frank Rayne, Director of Personnel Services for the

Maryland State Police wrote a letter to PCO Brooks' attorney advising that the Department believed that PCO Brooks was incapable of performing the essential job functions of her position, and would never be able to do so; PCO Brooks' use of sick leave severely affected Barrack operations and the morale of other PCO employees who were adversely affected by her unsatisfactory attendance and chronic medical condition; and that there were no data entry clerical positions in the Department or State at level 11. Mr. Rayne further stated that a final determination had not been made in PCO Brooks' employment status. The August 3, 2000, letter is attached hereto as Exhibit G.

17.   In a later follow-up telephone call to PCO Brooks' attorney, Mr. Rayne advised that PCO's are required to work rotating shifts and that accommodations would not be made. Mr. Rayne also advised that there were no vacant positions available for PCO Brooks in the Licensing Division.

18.   In August 2000, PCO Brooks' supervisor, Dan Hicks, prepared her mid-cycle Performance Planning and Evaluation Program ("PPEP"). The evaluation was not given to PCO Brooks until September 2000. PCO Brooks was advised by Dan Hicks and Sergeant William Hayes that the delay occurred because Colonel Arrington, Lieutenant Gardner and Mr. Rayne ordered Mr. Hicks to lower PCO Brooks' evaluation rating to unsatisfactory, but Mr. Hicks refused to change the rating.

19.   In September 2000, Mr. Hicks revised the schedule for the PCOs assigned to the Waterloo Barrack. The schedule was revised because the Barrack was making medical accommodations for PCO Phil Fister, a white male. PCO Fister was assigned a permanent shift as a result of a medical condition. This is the same accommodation that

was denied to PCO Brooks just one month prior. See Exhibit H.

20. In November 2000, Mr. Hicks revised the schedule again. The revised schedule had PCO Fister continuing on a permanent shift, and Mr. Hicks, also a white male, being scheduled for a permanent shift. Mr. Hicks was given a permanent schedule due to his responsibilities; however, Mr. Hicks told several employees that it was due to a medical condition relating to chest pains. See Exhibit I.

21. In April 2001, PCO Elaine Brown, an African American female assigned to the Waterloo Barrack, requested and received a transfer to the Maryland State Police, Licensing Division. This position provides a Monday through Friday, non-rotating shift position.

22. PCO Brooks requested a transfer to this Division in July 2000, but was advised that there were no positions available.

23. During the entire time she has been employed by the MSP, PCO Brooks has received overall PPEP ratings that have either met or exceeded the MSP standards.

24. On July 25, 2001, PCO Brooks filed a complaint with the EEOC against the Maryland State Police alleging that the facts presented above resulted in a denial of accommodation to work a non-rotational shift. See Exhibit J.

25. On September 25, 2001, the EEOC sent PCO Brooks a letter informing her of her right to sue. See Exhibits K and L.

26. On January 21, 2001, PCO Brooks filed a timely complaint in the District Court of Maryland, for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000(e)., et. seq., and the Americans With Disabilities

Act (ADA), 42 U.S.C. Sec. 12101, et. seq.

27. In October 2002, the parties filed a motion to stay proceedings pending an internal investigation of these charges by the Maryland State Police.

28. After her EEOC filing, PCO Brooks experienced further discrimination. Sgt. Steve Hamm filled out a Job Observation Report (Form 164A) indicating poor job performance by PCO Brooks for failing to correctly fill in time on an Employee Work and Leave Report (Form 31) for August 7, 2002. PCO Brooks corrected her error on the Form 31, by making comments withing the Form 164's "Employee's Comments." See Exhibit M.

29. For her comments on the Form 164A, amending her error on the Form 31, Sgt. Hamm gave PCO Brooks another unfavorable review, through a Form 164A, citing insubordination. In his Form 164A to PCO Brooks, Sgt. Hamm stated:

> Be thankful of your government job, Ms. Brooks. As the beneficiary of a broken system, the state police accommodates you without precedent, allowing you to expend leave at disturbing rates and in suspect combinations.

See Exhibit N.

30. On August 15, 2002, at the request of PCO Brooks, the Fair Practices Unit of the Maryland State Police, initiated a formal inquiry into PCO Brooks' alleged hostile work environment. See Exhibit O.

31. On July 23, 2003, the Fair Practices Unit issued a disposition report with respect to Lt. Tom Gardner and Sgt. Steve Hamm, stating "direct and circumstantial evidence indicates a pattern of conduct one can deduct as harassment." The report also

recommended the separation of all three individuals. See Exhibit P.

32. In March 2003, PCO Brooks received an unsatisfactory evaluation from Police Communications Superviso (PCS) Joseph Miller. However, PCO Brooks had not worked with PCS Miller since September 2002.

33. On August 6, 2003, the Fair Practices Unit issued a report with respect to Lt. Gardner and PCS Miller. The Fair Practices Unit found:

> PCS Miller stated he doesn't observe the Complainant's work because he doesn't work with the Complainant. However, when asked how he can fairly rate the PCO's when he doesn't work with them, he stated that he can tell which ones are doing their work, commenting that he makes mental notes of things, but doesn't document them. This method is unacceptable in determining evaluation ratings and justification for these ratings.

The Fair Practice Unit's report, in regards to Lt. Gardner and PCS Miller, concluded that "Both of the accused's behavior is disturbing, and if allowed to go unchecked, their behavior could place this department in a position that is indefensible." It further found that there are other employees at the Waterloo Barracks who had used "as much leave as the Complainant, if not more, but have not been adversely affected by lowered PEP evaluation." See Exhibit Q.

34. On December 17, 2002, PCO Brooks began working for the Maryland State Police Department of Motor Vehicle Administration. She worked a steady 7:00AM – 3:00PM shift, while receiving the same wage she earned as a PCO at the Waterloo Barracks.

35. On September 30, 2003, PCO Brooks was ordered to return to work at the Waterloo Barracks, to work under PCS Miller.

36. Upon return, PCO Brooks continued to experience harassment from her peers at Waterloo. She was constantly referred to, by other officers, as "AWOL." See Exhibit N.

37. On December 15, 2003, PCO Brooks was ordered by the Maryland State Police to undergo a medical evaluation. She was not given any reason for the order other than that someone from the Waterloo Barracks had filed a hygiene complaint against her, alleging that "she smelled like an animal."

38. The medical examination failed to substantiate the hygienic complaint.

39. From December 17, 2003 through January 22, 2004, PCO Brooks was on leave pursuant to the Family and Medical Leave Act (FMLA).

40. On January 21, 2004, PCO Brooks was ordered to return to full duty, rotating shift-status at the Waterloo Barracks. See Exhibit R.

41. On January 23, 2004, PCO Brooks requested additional leave under the FMLA. PCO Brooks' accompanying Health Care Certification form indicated that PCO Brooks was unable to work in any capacity, including administrative desk duties. See Exhibit S.

42. On February 3, 2004, the FMLA leave was approved.

43. On February 6, 2004, PCO Brooks was ordered back to work. Currently, she works a rotating shift at the Waterloo Barracks. See Exhibit T.

## COUNT I

Melody L. Brooks sues the Maryland State Police for violation of 42 U.S.C. § 2000 (e), incorporating the allegations in paragraphs [1-21] 1-43.

[22.] 44.   PCO Brooks' request to transfer to the Maryland State Police, Licensing Division, was denied, while an African American female, in a similar position, was not threatened with termination, but was given the transfer. The basis for PCO Brooks denial of transfer was that she is Caucasian.

[23.] 45.   By denying PCO Brooks accommodations because of her race, the employer violated PCO Brooks' rights protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e).

## COUNT II

Melody L. Brooks sues the Maryland State Police for violation of 42 U.S.C. § 2000 (e), incorporating the allegations in paragraphs [1-23] 1-45.

[24.] 46.   PCO Brooks' request for a permanent schedule due to her medical condition was denied, while two white males were given permanent schedules due to their medical conditions.

[25.] 47.   By denying PCO Brooks accommodations because of her gender, the employer violated PCO Brooks' rights protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (e).

## COUNT III

Melody L. Brooks sues the Maryland State Police for violation of 42 U.S.C. § 12001, incorporating the allegations in paragraphs [1-25] 1-47.

[26.] 48.   The Maryland State Police threatened PCO Brooks with termination because of her disability, which was occasioned by her endometriosis. The Maryland State Police denied PCO Brooks a permanent schedule stating that it was an essential job

function to be able to work rotating shifts. The Maryland State Police then provided permanent shifts to two white males and a black female because of medical conditions, while still denying the same accommodation to PCO Brooks.

49. The Maryland State Police, in its Fair Practice Unit's investigation, found that PCO Brooks had been treated in an unjustified and unacceptable manner by her supervising officers and in retaliation for her prior complaints.

[27.] 50. Because PCO Brooks was threatened with termination because of a disability and/or perceived disability, and because the employer did not attempt to reasonably accommodate PCO Brooks' disability, while accommodating other similarly situated employees, the employer violated PCO Brooks' rights protected by the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101.

WHEREFORE, Melody L. Brooks requests the following relief:

A. That this Court issue a judgment declaring the actions against her to be in violation of her federally-protected rights under 42 U.S.C. § 2000e et seq.;

B. That this Court issue a judgment declaring the actions against her to be in violation of her federally-protected rights under 42 U.S.C. § 12101 et seq.;

C. That this Court award compensatory damages in the amount of a $300,000.00 and punitive damages in the amount of $1,000,000.00;

D. That this Court order the transfer or assignment of a permanent schedule to Melody L. Brooks as a PCO with the Maryland State Police.

E. That this Court award reasonable costs in attorneys' fees; and

F. That this Court award such other and further relief as the Court deems

appropriate.

_____
Michael Marshall
Schlachman, Belsky & Weiner, P.A.
20 South Charles Street, 10th Floor
Baltimore, Maryland 21201
(410) 685-2022
Attorneys for Plaintiff